IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHERRALL RANDALL,

    *Plaintiff,*

    v.

BOZZUTO MANAGEMENT COMPANY,

    *Defendant.*

Civil No. 1:25-cv-02147-JRR

## MEMORANDUM OPINION

Pending before the court is Defendant Bozzuto Management Company's Motion to Dismiss or, in the alternative, Motion for Summary Judgment at ECF No. 14 (the "Motion"). *Pro se* Plaintiff Sherrall Randall did not oppose or otherwise respond to the Motion. The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons that follow, by accompanying order, the Motion, construed as a motion to dismiss, will be granted.

## I.    BACKGROUND[1]

Plaintiff is a person with a disability, Posttraumatic Stress Disorder ("PTSD"), who previously lived at the Azure Oxford Square Apartments ("Azure"), an apartment complex owned and managed by Defendant. (ECF No. 1 at p. 6.)[2] Defendant previously "claimed to have issued a legal ban" against Ricardo Barbour, seemingly prohibiting him from being on the Azure premises, but Mr. Barbour "continued [to] access the building where Plaintiff resided."[3] *Id.* Plaintiff "submitted multiple written request[s] to [Defendant's] legal team," "requesting to be

---

[1] In ruling on the instant Motion, the court accepts as true all well-pled facts set forth in the Complaint (ECF No. 1). *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

[2] References to this document refer to the CM/ECF pagination.

[3] Mr. Barbour was later incarcerated for domestic violation in April 2025. (ECF No. 1 at p. 8.) "He has since made recorded threats against Plaintiff from Anne Arundel Count[y] jail, after she witnessed a violen[t] attack by Ricardo Barbour on Kayla Collins," a previous tenant of Defendant. *Id.*

reasonably accommodated through a unit transfer" based on "the ongoing threat and worsening PTSD symptoms." *Id.* Defendant denied Plaintiff's requests and terminated her lease, forcing Plaintiff and her children to vacate the apartment on December 7, 2024. *Id.* As a result, Plaintiff and her children became unhoused. *Id.* On February 4, 2025, Defendant's attorney notified Plaintiff via email that she had been banned from Defendant's properties. *Id.* Despite multiple requests for the "ban," Defendant did not produce one to Plaintiff. *Id.* at p. 8.

Plaintiff contends that Defendant's "failure to enforce it's (sic) own . . . legal ban allowed Mr. Barbour continued access to the Azure property, exposing Plaintiff to further trauma and fear." (ECF No. 1 at p. 8.) Plaintiff initiated the instant action on July 2, 2025, and asserts the following matters are at issue in this case: the Fair Housing Act ("FHA"), the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("Section 504"), "Civil Rights Conspiracy," and "Due Process." *Id.* at p. 4. In particular, Plaintiff complains Defendant wrongly denied her accommodation request, misrepresented the legal ban, denied her due process before imposing the ban, and failed to protect her.[4] *Id.* at p. 8. Plaintiff seeks $50,000,000 in compensatory and punitive damages, as well as injunctive relief "to prevent [Defendant] from continuing to harm tenants through misuse of bans, failure to accommodate disabilities, and misrepresentation to state agencies." *Id.* at p. 7.

## II.   LEGAL STANDARD[5]

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint." *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *as amended*

---

[4] Plaintiff also makes reference to "eviction" and "police involvement"; however, she fails to allege any facts as to any claim related to same (*e.g.*, while Plaintiff notes that Defendant terminated her lease, she does not allege the termination was unlawful or in violation of her lease agreement).

[5] Because the court concludes Plaintiff's claims are properly dismissed pursuant to Rule 12(b)(6), the court does not reach Defendant's argument raised in the alternative that it is entitled to summary judgment. (ECF No. 14-1, noting that "[t]o the extent any of Ms. Randall's claims were properly stated, however, the undisputed facts would demonstrate that [Defendant] is entitled to summary judgment").

(Jan. 20, 2017) (quoting *Papasan v. Allain*, 478 U.S. 265, 283 (1986)).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, thereby nudging its claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (citation modified) (quoting *Twombly,* 550 U.S. at 555, 570).  The plausibility requirement is not "a probability requirement but rather a mandate that a plaintiff 'demonstrate more than a sheer possibility that a defendant has acted unlawfully." *In re Birmingham*, 846 F.3d at 92 (quoting *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)).  Reliance on "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient.[6] *Twombly*, 550 U.S. at 555.

III.    **ANALYSIS**

As an initial matter, this court is mindful of its obligation to construe liberally the pleadings of self-represented litigants. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  "In practice, this liberal construction allows courts to recognize claims despite various formal deficiencies, such as

---

[6] In ruling on a Rule 12(b)(6) motion, the court generally does not consider evidence outside of a complaint.  Because the court declines to convert Defendant's Motion to one for summary judgment, it similarly declines to consider the exhibits attached to the Motion where Defendant has not argued they are integral to the Complaint, explicitly incorporated into the Complaint, or are otherwise properly subject to judicial notice.  *See Fairfax v. CBS Corp.*, 2 F.4th 286, 292 (4th Cir. 2021) (regarding consideration of integral documents); *Goines v. Valley Comm. Svcs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (regarding documents explicitly incorporated into the complaint by reference); *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (regarding judicial notice).

incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022).

Such liberal construction, however, does not absolve Plaintiff from pleading a plausible claim, and

this court "may not act as an advocate for a self-represented litigant" by "conjur[ing] up" issues

not presented. *Desgraviers v. PF-Frederick, LLC*, 501 F. Supp. 3d 348, 351 (D. Md. 2020) (first

quoting *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F.

App'x 135 (4th Cir. 2014); and then quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278

(4th Cir. 1985)).

Affording Plaintiff's Complaint liberal construction, the court, like Defendant, reads

Plaintiff's Complaint to make three general allegations—(1) Defendant exposed Plaintiff to harm

by failing to enforce a legal ban of Mr. Barbour; (2) Defendant denied Plaintiff due process when

it banned her from its properties;[7] and (3) Defendant's denial of her request for accommodation

constituted discrimination based on disability and violated Plaintiff's associated rights. The court

construes the Complaint to assert claims of common law negligence, violation of due process under

the Fifth or Fourteenth Amendments to the U.S. Constitution, and violation of the FHA.[8]

---

[7] To the extent Plaintiff also intended to argue that Defendant fraudulently misrepresented the "ban" issued against her, she has failed to state a plausible claim where she has not alleged how the phrase "legal ban" was false, that the characterization was made for the purposes of defrauding her, that she relied upon same, or that she suffered a compensable injury as a result. *See Hoffman v. Stamper*, 385 Md. 1, 28 (2005) (stating the elements for the tort of fraud on affirmative misrepresentation).

[8] To the extent Plaintiff intended to assert claims under the ADA, Section 504, and of "Civil Rights Conspiracy," though the Complaint does not otherwise allege facts to support same, such claims are similarly deficient. First, Plaintiff "does not allege which ADA provision Defendant[] violated, . . . perhaps because none apply to Defendant[], which own[s] and manage[s] a private apartment complex." *See Want v. Shindle Props., LLC*, No. PWG-18-2833, 2018 WL 5392521, at *5 (D. Md. Oct. 29, 2018). Indeed, "the ADA does not apply to private residential properties." *Stemmons v. Corso*, No. CV ELH-21-1035, 2022 WL 345041, at *5 n.6 (D. Md. Feb. 4, 2022) (citing cases); *see Hardaway v. Equity Residential Servs., LLC*, No. CIV.A. DKC 13-0149, 2015 WL 858086, at *5 (D. Md. Feb. 26, 2015), *aff'd sub nom.*, 675 F. App'x 381 (4th Cir. 2017) (noting Title III of the ADA, which prohibits discrimination by "any person who owns, leases (or leases to) or operates a place of public accommodation," *see* 42 U.S.C. § 12182, does not apply to a privately-owned residential apartment complex). Relatedly, Section 504 concerns "any program or activity receiving Federal financial assistance," *see* 29 U.S.C. § 794(a), which Plaintiff has not alleged here. *See, e.g.*, *Pickens v. Comcast Cable*, No. CIV. WDQ-13-2236, 2015 WL 127822, at *2 (D. Md. Jan. 7, 2015) (noting "a plaintiff also must show that the program or activity in question receives federal financial assistance"). And finally, Plaintiff's reference to "Civil Rights Conspiracy," which appears to reference 42 U.S.C. § 1985(c), is unsupported by any allegations of a conspiracy between two or more entities or persons. *See Ziglar v. Abbasi*, 582 U.S. 120, 154 (2017) (noting that "[t]o state a claim under § 1985(3), a plaintiff must first show that the defendants conspired—that

A.  **Negligence Claim**[9]

With regard to Plaintiff's first claim, to state a claim of negligence, a plaintiff must allege "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 131–32 (2007) (quoting *Valentine v. On Target*, 353 Md. 544, 549 (1999)).  "Because '[t]here can be no negligence where there is no duty that is due[,]' an analysis as to negligence usually begins 'with the question of whether a legally cognizable duty exi[s]ts.'" *Kennedy Krieger Inst., Inc. v. Partlow*, 460 Md. 607, 633 (2018) (quoting *Doe v. Pharmacia & Upjohn Co.*, 388 Md. 407, 414 (2005)).  A duty is "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Doe*, 388 Md. at 415 (quoting *Dehn v. Edgecombe*, 384 Md. 606, 619 (2005)).

At issue here, "there is no special duty imposed upon the landlord to protect his tenants against crimes perpetrated by third parties on the landlord's premises." *Scott v. Watson*, 278 Md. 160, 166 (1976).  Nonetheless, "[i]f the landlord knows, or should know, of criminal activity against persons or property in the common areas," based primarily on "criminal activities existing on the landlord's premises," then the landlord "has a duty to take reasonable measures, in view of the existing circumstances, to eliminate the conditions contributing to the criminal activity." *Id.* at 166, 169.  In summary, a legal duty "to take reasonable security measures" arises where "(1) the

---

is, reached an agreement—with one another").  Accordingly, even had Plaintiff intended to assert the foregoing claims, she has failed to state plausible claims.

[9] "When choosing the applicable state substantive law while exercising diversity or supplemental jurisdiction, a federal district court applies the choice of law rules of the forum state." *State Auto. Mut. Ins. Co. v. Lennox*, 422 F. Supp. 3d 948, 961 (D. Md. 2019) (quoting *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011)). Relevant here, Maryland courts ordinarily apply the law of the place where the tort occurred under the doctrine of *lex loci delicti*. *Sherrod v. Achir*, 149 Md. App. 640, 647 (2003).  There is no dispute here that the alleged harm occurred in Maryland and that Maryland law governs Plaintiff's negligence claim.

landlord had knowledge or should have had knowledge of criminal activity having taken place on the premises, and (2) a landlord of ordinary intelligence, based on the nature of the past criminal activity, should have foreseen the harm suffered." *Hemmings v. Pelham Wood Ltd. Liab. Ltd. P'ship*, 375 Md. 522, 546 (2003).

Plaintiff has failed to plausibly allege that Defendant owed Plaintiff a duty with regard to its enforcement of the ban of Mr. Barbour. Plaintiff's allegations present an issue of foreseeability. "[W]here the risk created is one of personal injury . . . the principal determination of duty becomes foreseeability." *Hemmings*, 375 Md. at 541 (quoting *Matthews v. Amberwood Assocs. Ltd. P'ship, Inc.*, 351 Md. 544, 561 (1998), *holding modified by Tracey v. Solesky*, 427 Md. 627 (2012)); *see Jacques v. First Nat. Bank of Maryland*, 307 Md. 527, 534–35 (1986) ("In determining whether a tort duty should be recognized in a particular context, two major considerations are: the nature of the harm likely to result from a failure to exercise due care, and the relationship that exists between the parties. . . . [W]here the risk created is one of personal injury, no such direct relationship need be shown, and the principal determinant of duty becomes foreseeability." (citation omitted)).

Plaintiff here alleges no facts to support that a reasonable landlord should have foreseen the harm allegedly suffered. *See Hemmings*, 375 Md. at 546, *supra*. Plaintiff alleges no relationship to Mr. Barbour or facts to suggest Mr. Barbour was dangerous to her during her tenancy at Azure.[10] (ECF No. 1 at pp. 6–8.) There is no allegation as to the basis of Mr. Barbour's legal ban, that the reason or cause for the ban in any way related to Plaintiff, or more importantly, of any facts that would have put Defendant on notice that Mr. Barbour posed a risk to Plaintiff. *Id.* In the absence of same, Plaintiff has failed to allege a cognizable duty owed to her by Defendant that was breached; she thus fails to state a plausible claim.

---

[10] Plaintiff does allege that she witnessed Mr. Barbour attack another former tenant of Azure, Kayla Collins, in April 2025, but this occurred after Plaintiff had vacated Azure. (ECF No. 1 at p. 8.)

In addition to the deficiency of Plaintiff's pleadings as to duty, Plaintiff's allegation of injury is similarly insufficient.  While Plaintiff alleges that Defendant's purported negligence "expos[ed] [her] to further trauma and fear," she fails to allege facts in support of any actual injury or loss that she experienced because of same.  Even allowing that Plaintiff asserts emotional distress, the pleading still fails to state a plausible claim.  "Traditionally, recovery for emotional distress as an element of damage in a negligence action required proof of a physical injury or, in some instances, a physical impact."[11]  *Alban v. Fiels*, 210 Md. App. 1, 16 (2013) (citing *Vance v. Vance,* 286 Md. 490, 496–497 (1979)); *see Chiao v. United Airlines, Inc.*, No. CV ELH-25-687, 2026 WL 251732, at *14 (D. Md. Jan. 30, 2026) (recognizing same); *Wright v. Willow Lake Apartments (MD) Owner, LLC*, 648 F. Supp. 3d 647, 666 (D. Md. 2023) (recognizing same). Emotional distress may, however, be "deemed genuine and compensable even though the tortious conduct did not cause bodily harm" so long as it "manifested objectively."  *Exxon Mobil Corp. v. Albright*, 433 Md. 303, 350–51, *on reconsideration in part,* 433 Md. 502 (2013) (citing *Beynon v. Montgomery Cablevision Ltd. P'ship,* 351 Md. 460, 506–07 (1998)).  Plaintiff has alleged no such objective manifestation of emotional distress.   Accordingly, Plaintiff's claim sounding in negligence is also subject to dismissal.

### B.  Due Process Claim

Plaintiff's second claim appears based on the allegation that Defendant banned her from Defendant's property "without providing notice or an opportunity to challenge the ban."  (ECF

---

[11] As the Maryland Appellate Court explained:

> In Maryland, recovery may be had for emotional distress arising out of tortious conduct, as an element of damage, not as an independent tort. *Hamilton v. Ford Motor Credit Co.,* 66 Md. App. 46, 62–63, 502 A.2d 1057, *cert. denied,* 306 Md. 118, 507 A.2d 631 (1986). In other words, Maryland does not recognize the tort of negligent infliction of emotional distress.

*Alban v. Fiels*, 210 Md. App. 1, 16 (2013).

No. 1 at p. 5.)  To the extent she intended to assert that this legal ban violated her right to due process under the Fifth or Fourteenth Amendments, she has not stated a claim. Due process is concerned with government, not private, action.  *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982) (noting "the Due Process Clause protects individuals only from governmental and not from private action"); *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) (noting the "touchstone of due process is protection of the individual against arbitrary action of government"); U.S. CONST. AMEND. XIV § 1 (providing that no State shall "deprive any person of life, liberty, or property, without due process of law").   There is no allegation of government action here.[12]  On this basis, Plaintiff fails to state a claim.

## C.  FHA Claim

Finally, any asserted failure to accommodate under the FHA similarly fails under Rule 12(b)(6). "[T]he FHA makes it unlawful to 'make unavailable or deny . . . a dwelling to any buyer or renter because of a handicap,' 42 U.S.C. § 3604(f)(1), or to 'discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling . . . because of a handicap.' 42 U.S.C. § 3604(f)(2)." *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 639 (4th Cir. 2016).   Such discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(3).  To state a failure to accommodate claim under the FHA, a plaintiff must "plead facts showing that the requested accommodation was both reasonable and necessary, in light of a disability, to afford a tenant equal

---

[12] Further, even were there some government action alleged, Plaintiff has not alleged any liberty or property interest in her access to private properties owned and operated by Defendant when she no longer resided at any such property. *See Bailey-El v. Housing Authority of Balt. City*, 686 F. App'x 228, 229 (4th Cir. 2017) ("[T]he first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty."). Indeed, as Defendant notes, a property owner's "bundle of rights" includes "the right to exclude others." *See Weems v. Cnty. Comm'rs of Calvert Cnty.*, 397 Md. 606, 619 (2007) (noting the Supreme Court "has remained consistent in asserting that included amongst a property owner's 'bundle of rights' is the right to exclude others").

opportunity to use and enjoy housing." *Shomo v. Cooksey*, No. CV SAG-24-03427, 2025 WL 1425518, at *4 (D. Md. May 16, 2025); *see Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 272 (4th Cir. 2013) (noting "[a] party raising an accommodation claim under the [FHA] bears the burden of establishing that the proposed accommodation is '(1) reasonable and (2) necessary (3) to afford handicapped persons equal opportunity to use and enjoy housing'") (citation omitted)). The necessary prong "requires the demonstration of a direct linkage between the proposed accommodation and the 'equal opportunity' to be provided to the handicapped person," having "attributes of a causation requirement." *Bryant Woods Inn, Inc. v. Howard Cnty., Md.*, 124 F.3d 597, 604 (4th Cir. 1997). "[I]f the proposed accommodation provides no direct amelioration of a disability's effect, it cannot be said to be 'necessary.'" *Id.* (citation omitted). Where, as Defendant notes, Plaintiff alleges no facts to support a connection between the requested accommodation—a different unit—and her disability (PTSD), or how failure to provide a different unit impacted her opportunity to use or enjoy her housing, she has failed to allege a plausible FHA claim.

## IV.    CONCLUSION

Accordingly, for the reasons set forth herein, by separate order, Defendant's Motion (ECF No. 14) will be granted.[13]

June 16, 2026                              /S/

_____
Julie R. Rubin
United States District Judge

---

[13] Notwithstanding Defendant's request, the court declines to dismiss Plaintiff's Complaint with prejudice. *See Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 292 (4th Cir. 2018) (stating that "the nature of dismissal" is left to "the sound discretion of the district court").

9